**In the Interest of: M.D., a Minor.**

**Appeal of: M.D.**

Superior Court of Pennsylvania.

Submitted July 21, 2003.
Filed Dec. 19, 2003.

Victoria H. Vidt, Pittsburgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

Before: HUDOCK and BECK, JJ., McEWEN, P.J.E.

BECK, J.

¶ 1 We address the question of whether an order entered after a juvenile review hearing, directing that the juvenile's commitment be continued in the same treatment facility, is a final order subject to appeal. We conclude that it is not and so quash the appeal.

¶ 2 M.D., born in February of 1984, has a long history of mental health problems, including several involuntary commitments. When M.D. was fourteen he attacked his father (Father), with whom he was living, and was charged with simple assault by way of a juvenile petition for delinquency. A second petition charged M.D. with simple and aggravated assault of two police officers on the same date. M.D. was detained and ultimately placed in a youth home. Although the petition concerning Father was later withdrawn at Father's request, the petition concerning the police was continued pending further observation of M.D. at the youth home.

¶ 3 M.D. did not fare well under supervision. In November of 1999 another juvenile petition was filed, alleging that M.D. physically attacked three school employees. M.D. was adjudicated delinquent for three counts of simple assault and Allegheny Children, Youth and Family Services (CYF) began a search for an appropriate residential treatment facility (RTF). Ultimately, M.D. was placed at Auberle RTF. But in April of 2000, he attacked an employee at Auberle, prompting another juvenile petition alleging aggravated assault. M.D. again was adjudicated delinquent; he remained in secure detention and CYF sought another RTF placement. Thereaf-

ter, for reasons not clear in the record, M.D. was placed on probation and returned to Father's custody.

¶ 4 In October of 2000, the court found M.D. in violation of his probation for "aggressive and assaultive behavior" against his peers and Father. In December of that year, M.D. was committed to WPIC–Kidstep RTF; in July of 2001, he was committed to Harborcreek Youth Services. Following a failure to adjust allegation based on continued physical aggression, M.D. was returned to secure detention.

¶ 5 In January of 2002, based primarily on his continued problems with anger issues and aggressive behavior, M.D. was placed at the Gulf Coast Treatment Center in Florida (the Center). In July of 2002, the court held a review hearing and noted that the Center was the only facility willing to work with M.D. The court concluded that continued placement at the Center was appropriate and scheduled another review for October of 2002.

¶ 6 In October, the court conducted the review via teleconference. During the course of the telephone conversation, a therapist from the Center recommended that M.D. continue treatment there. When the court asked M.D. if he wished to speak, the therapist informed the court that M.D. was not present in the room. Defense counsel objected to M.D.'s absence and challenged the court's decision to enter an order under the circumstances. Defense counsel requested that the court schedule another hearing within thirty days. The court denied the request, but told counsel that in the event she had a particular concern, she could bring it to the court by way of motion and an expedited hearing would be scheduled. The court ordered M.D.'s continued placement at the Center and set the next review hearing for January of 2003. M.D. filed this appeal.

¶ 7 M.D. raises only one issue in this appeal: whether the court violated his due process rights by conducting a review hearing in his absence. We must consider first whether the order in question is appealable.

¶ 8 The law is clear that the Juvenile Act itself does not provide a right of appeal. *In the Interest of McDonough*, 287 Pa.Super. 326, 430 A.2d 308, 312 (1981). Rather, a juvenile's right of appeal stems from our state constitution:

> Article V Section 9 of the Pennsylvania Constitution provides that "there shall be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court." The Juvenile Court is a court of record and pursuant to Pa.R.A.P. 341, appeal may be taken as of right from any final order of an administrative agency or lower ... court. The final Order of a Juvenile Court is the Dispositional Order as to the Delinquent Child, pursuant to 42 Pa.C.S. § 6352.

*Commonwealth v. Clay*, 376 Pa.Super. 425, 546 A.2d 101, 103 (1988).

¶ 9 It is clear that a juvenile has the right of appeal following his initial disposition. *See In the Interest of M.M.*, 439 Pa.Super. 307, 653 A.2d 1271 (1995) (stating court's order placing juvenile on intensive drug and alcohol probation constitutes final order subject to appeal); *In the Interest of Smith*, 396 Pa.Super. 624, 579 A.2d 889 (1990) (holding court's dispositional order committing juvenile to youth correctional institution triggered right of appeal); *Clay, supra*. But the appeal in this case is not from the order of initial disposition, instead it is from an order entered *after* the disposition, namely, a review order. The trial court concluded, without discussion, that there is no right to appeal a review order. The parties concede that the question of appealability in

this context is not directly addressed in statute, rule or case law. Our analysis of the issue begins with our consideration of how the juvenile system operates.

¶ 10 Recently, this court considered whether amendments to the Juvenile Act triggered a juvenile's due process right to a jury trial. In finding that the amendments did not trigger such a right, the panel discussed the nature of the juvenile system, noting both its differences from the adult criminal system and its primary purpose:

[T]he juvenile justice system has undergone a transformation over the past two decades in which there has been a move away from the rehabilitation and protection of juvenile offenders toward more punishment and correctional oriented policies. Nonetheless, we cannot conclude that a juvenile adjudication has, in essence, become the equivalent of an adult criminal proceeding. The recent amendments to the Act are a reflection of the changing nature of juvenile crime, as society has witnessed a progression in the number of violent offenses committed by juveniles. While the principles and policies underlying our juvenile system have evolved, particular importance is still placed upon rehabilitating and protecting society's youth.

\* \* \*

The changes in the stated purpose of the Act reflect a concern that juveniles be held accountable for their actions and that the community be protected from violent juvenile offenders. These are not the court's exclusive concerns, however, as they must be balanced with the goal of developing juvenile offenders into responsible and productive members of the community. Any program of supervision, care and rehabilitation cho-

sen by the juvenile court must provide balanced attention to all three of these concerns. As such, concern for the juvenile remains the cornerstone of juvenile justice. It is also highly significant that the juvenile adjudication proceeding remains an intimate, informal and protective proceeding.

*In the Interest of J.F.,* 714 A.2d 467, 471 (Pa.Super.1998).

¶ 11 That the purposes and policies underlying the juvenile justice system differ significantly from those of the criminal justice system is perhaps most obvious in the authority granted to the juvenile hearing judge who makes the adjudication of delinquency and enters the disposition order. It is clear that as to commitment of delinquents, the juvenile justice system operates in a manner wholly different from the criminal justice system. The order of disposition in a juvenile matter is akin to the judgment of sentence in a criminal matter in that both are final orders subject to appeal. In the case of the criminal defendant, his sentence is set and, unless overturned on appeal, continues without further involvement by the trial court. The juvenile's disposition, however, is subject to frequent, mandatory review by the hearing court. The Juvenile Act sets out the broad range of possibilities afforded the judge at disposition, which include probation "under conditions and limitations the court prescribes," commitment to an institution, youth center or camp, and the imposition of fines, costs and restitution. 42 Pa.C.S.A. § 6352. Further, in the event a judge enters a disposition order that provides for commitment, the judge is *required* to review the propriety of that commitment every six months and must also hold a disposition review hearing at least every nine months. 42 Pa.C.S.A. § 6353.[1]

1. The law provides:

No child shall initially be committed to an

■ ¶ 12 "[T]he discretion of the Juvenile Court in implementing a disposition is broad, it is flexible and the Juvenile Court has considerable power to review and modify the commitment, taking into account the rehabilitative progress or lack of it of the juvenile." *In re Love,* 435 Pa.Super. 555, 646 A.2d 1233, 1238 n. 5 (1994). The continued involvement of the Juvenile Court in implementing its disposition order is an integral part of the juvenile system that not only sets it apart from the criminal justice system, but also fosters the key goals of the Juvenile Act, that is, providing for the care, supervision and rehabilitation of juvenile delinquents.

¶ 13 In this case M.D. asks that we deem all review orders final and appealable. But doing so would frustrate the very procedures of the Juvenile Act that are designed to benefit the minors it protects. Permitting appellate evaluation of every review order would deny the juvenile system the flexibility it now has and would limit the judge's exercise of discretion.

¶ 14 The Rules of Appellate Procedure clearly state that the filing of an appeal acts to limit the authority of the trial court to proceed in the matter. While the Rules do permit a trial court to take "such action as may be necessary to preserve the status quo," Pa.R.A.P. 1701(b)(1), the authority of a juvenile court judge to conduct meaningful six-month reviews would be thwarted if appeals were permitted. Even if a procedure was implemented to provide expedited appellate assessment for juvenile commitment review orders, appellate resolution of a review order (which must be preceded by the filing of briefs, scheduling of argument, if requested, drafting of a memorandum or opinion and agreement among panel members) within six months is highly unlikely. Therefore, the trial court's periodic review process would be seriously hampered. An argument can be made that Rule 1701(b)(1) should be redrafted to allow the periodic juvenile review procedure to continue during an appeal. Such a resolution may have merit, but any change must be made under the authority of the rulemaking powers and is not within the authority of the intermediate appellate court.

¶ 15 This case is a prime example of the difficulties inherent in allowing an appeal from a review order. In January of 2003, three months after the allegedly improper review hearing in this case, the juvenile court held another review hearing. At that January hearing, which all parties attended via teleconference, M.D. and his parents agreed that continued placement at the Center was appropriate. The transcript reveals that M.D. made significant progress in the preceding ninety days, that family therapy and parental involvement were going well, and that the staff at the Center expected M.D. to return to Father's home and receive community care in the near future.

¶ 16 These facts raise two separate concerns. First, if the trial judge had concluded that M.D. should have been released from the Center in January, she

---

institution for a period longer than four years or a period longer than he could have been sentenced by the court if he had been convicted of the same offense as an adult, whichever is less. The initial commitment may be extended for a similar period of time, or modified, if the court finds after hearing that the extension or modification will effectuate the original purpose for which the order was entered. The child shall have notice of the extension or modification hearing and shall be given an opportunity to be heard. The committing court shall review each commitment every six months and shall hold a disposition review hearing at least every nine months.

42 Pa.C.S.A. § 6353(a).

arguably would not have had the authority to make such a change because of the pending appeal.[2] *See* Pa.R.A.P 1701. Second, since M.D. did agree in January 2003 that placement continued to be appropriate, the issue of whether placement was appropriate back in October 2002 is moot. In neither scenario does a benefit accrue to M.D. as a result of his right to an appeal.

¶ 17 Further, as stated *supra*, if we were to deem all review orders subject to appeal, we would be engaging in rulemaking, a function within the exclusive jurisdiction of the Pennsylvania Supreme Court. *See Commonwealth v. Mason*, 507 Pa. 396, 400–03, 490 A.2d 421, 423–24 (1985); *see also In re N.B.*, 817 A.2d 530 (Pa.Super.2003) (stating that the question of the appealability of an order implicates the jurisdiction of this Court to review the order).

■ ¶ 18 We hold, therefore, that a committed juvenile does not have the right to appeal from a review order that continues his commitment in the same manner and place and that maintains the status quo.[3]

¶ 19 We are compelled to note a recent decision of the Pennsylvania Supreme Court that addresses a similar issue. *In the Interest of H.S.W.C.-B. & S.E.C.-B.,* *Minors,* —— Pa. ——, 836 A.2d 908 (2003), concerns the propriety of an appeal from an order denying a change of goal and termination in a dependency matter. A panel of this Court had held that such an order was not appealable because it simply maintained the status quo, but the Supreme Court disagreed. The Supreme Court found that orders entered following a periodic review hearing on a change of goal and termination are appealable even if they merely maintain the status quo because "maintaining the status quo could put the needs and welfare of a child at risk." *Id.* at 910.

¶ 20 In reaching its conclusion that an appeal was proper, the *H.S.W.C.-B.* court recognized the very problems we raise here, namely, that periodic review hearings in the trial court may be hampered by the filing of an appeal, and, further, that if review hearings were to continue, the orders entered as a result of the hearings may render the matter on appeal moot. The *H.S.W.C.-B.* court resolved these issues directly and held that 1) all periodic review hearings were to continue despite the pending appeal, and 2) the order denying the change of goal or termination was to "remain in effect until overturned on appeal or rendered moot by a subsequent order." *Id.* at 911.

2. Indeed, by now M.D. likely has been released from the Center, despite the fact that his appeal 'has been pending in this court.

3. Our research has revealed one case wherein a panel of this court permitted an appeal from a review order in a delinquency case. *In the Matter of R.B.*, 765 A.2d 396 (Pa.Super.2000), concerned a juvenile who filed an appeal from a review order that continued the juvenile's placement at a certain facility and also required the juvenile to submit to an evaluation at Johns Hopkins to determine his receptivity to pharmacological intervention for sexual dysfunction. The *R.B.* court held that the review order was final because of the addi-

tional requirement set out in the medical evaluation. That addition, according to the court, modified a previously entered, final order of disposition. *Id.* at 400. In this case, M.D. did not appeal the dispositional order entered in December of 2000, which resulted in his commitment to a residential treatment facility, that is, Kidstep. Nor did he challenge any of the orders modifying this disposition, such as the commitment order dated August 20, 2001, which transferred him to Harborcreek, or the order dated January 14, 2002, which transferred him to the Center. Rather, this appeal is from a review order that mandated that M.D. remain at the Center.

¶ 21 The *H.S.W.C.-B.* holding does not control this case as the issue there was change of goal and termination and the issue here is place of commitment following adjudication of delinquency. However, the Supreme Court's rationale arguably applies to this case. Like a minor who may be harmed by languishing in foster care, a minor likewise may be harmed by continuing to be committed to a facility that is inappropriate for him. That possibility militates in favor of allowing appeals in this context, just as they now are permitted in the context set out in *H.S.W.C.-B.*

¶ 22 Of course, whether the Pennsylvania Supreme Court would extend the rationale of *H.S.W.C.-B.* to these facts is uncertain. Although the concerns here are analogous, they are not identical. Further, the issue is a significant one in that it implicates the operation of Pa.R.A.P. 1701 and the authority of the trial court to proceed in matters on appeal. We would decline to institute a broad extension of *H.S.W.C.-B.* as such a task is best left to the state Supreme Court or its Rules Committee.

¶ 23 In any event, even if we did extend the rationale of *H.S.W.C.-B.* to this case, we would not reach the merits. The Supreme Court very clearly held that periodic reviews should continue during the appeal period and an order entered by the trial court after the filing of the appeal can have the effect of making the appeal moot. This is precisely what occurred here. M.D. agreed in January 2003 that continued placement was appropriate; therefore, the issue of whether continued placement

was appropriate in October 2002 is now moot.

 ¶ 24 For the reasons set forth above, we conclude that the order appealed from in this case is not a final order and is not subject to appeal.[4] As a result, we are compelled to quash the appeal.

¶ 25 Appeal quashed.

---

4. M.D. argues in the alternative that the order is appealable as a collateral order under Rule 313. Under this exception, an order is immediately appealable if: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. *N.B., supra.* The review order in this case is not a collateral order. The order continuing M.D.'s commitment at the Center is not separable from the main cause of action; it is the main cause of action.