J-S89032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Z.V., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S., MOTHER | |
| | No. 1211 EDA 2016 |

Appeal from the Order Entered March 16, 2016
in the Court of Common Pleas of Philadelphia County Family Court
at No(s): CP-51-DP-0001269-2015

BEFORE: SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:           **FILED JANUARY 24, 2017**

D.S. ("Mother") appeals from the order entered in the Philadelphia County Court of Common Pleas that directed the Department of Human Services ("DHS") to add a concurrent permanency plan of adoption for Z.V., born November 2008 ("Child").[1] Mother claims that the trial court erred in changing the prior plan of reunification without a hearing. We vacate the order and remand for further proceedings.

The relevant procedural history is as follows. On May 10, 2015, DHS obtained an order of protective custody ("OPC") regarding Child based on reports that Mother repeatedly hit Child with different implements. Following a shelter care hearing, the trial court, with the Honorable Vincent L. Johnson presiding, granted DHS legal and physical custody over Child. Child was initially placed with Child's maternal grandmother.

---

[*] Former Justice specially assigned to the Superior Court.

[1] Child's father is deceased.

On May 15, 2015, DHS filed a dependency petition regarding Child. DHS asserted aggravated circumstances, namely, the involuntary termination of Mother's parental rights to Child's sibling. Dependency Pet., Statement of Facts, 5/15/15, at ¶¶ l-m. On May 27, 2015, the trial court adjudicated Child dependent and set a permanent placement plan of "return to guardian." Order 5/27/15, at 1. The court referred Mother to the Clinical Evaluation Unit for a drug screen and a dual diagnosis assessment. *Id.* at 2.

On July 29, 2015, following a permanency review hearing, the trial court entered an order indicating Mother did not meet the criteria for substance abuse intervention. Order, 7/29/15, at 1. The court referred Mother to Behavioral Health Systems for a consultation or evaluation and directed the Community Umbrella Agency ("CUA") to refer Mother to anger management counseling. The court directed that Child be placed in foster kinship care with Child's maternal aunt.

On December 16, 2015, the trial court convened a permanency review hearing. At the beginning of the hearing, DHS's counsel indicated that a ruling on DHS's allegations of aggravated circumstances had been deferred. N.T., 12/16/15, at 5. DHS entered copies of a September 29, 2004 order involuntarily terminating Mother's parental rights to Child's sibling into the record. *Id.* DHS's counsel requested that DHS make no reasonable efforts toward reunification. *Id.* Following arguments by Mother's counsel, the court directed that "no reasonable efforts are needed." *Id.* at 7.

DHS presented additional testimony from Child's CUA case manager, who indicated that visitation had been suspended based on the recommendation of Child's therapist. *Id.* at 9-10. Mother's counsel objected suggesting that DHS did not present evidence of a grave threat to Child. *Id.* at 10. In response, DHS presented the case manager's testimony that Child reported (1) her sibling sexually abused her when Child and sibling were in Mother's care, (2) Mother and Child's sibling taught Child sexual behaviors, and (3) Child placed a firearm against her own head because her Mother told Child she was "bad." *Id.* at 16-18. DHS's counsel indicated that child protective services reports were made in September, and the matter was "being investigated." *Id.* at 18. Moreover, DHS's counsel averred, "I believe [the reports] have been substantiated." *Id.* The court determined that visitation with Mother constituted a grave threat to Child and ordered visitation be permanently suspended unless it occurred in a therapeutic setting. *Id.* at 19.

Following the December 16, 2015 hearing, the trial court entered a permanency review order memorializing its suspension of visitation. Permanency Review Order, 12/16/15, at 1. However, the court did not change the permanent placement plan of reunification. *See id.* at 1. Additionally, the court directed that CUA refer Mother for a parenting capacity evaluation and that Mother continue with therapy. *See id.* at 2. The court scheduled a permanency review hearing for March 2016.

The trial court also entered a separate aggravated circumstances order finding the existence of aggravated circumstances and directing the cessation of efforts "to preserve the family and reunify [Child and Mother]." Aggravated Circumstances Order, 12/16/15, at 1. In that order, the court directed that a hearing be held within thirty days.[2] *Id.*

A hearing was not held within thirty days of the trial court's aggravated circumstances order, and the matter proceeded to a permanency review hearing held on March 16, 2016, before the Honorable Lyris Younge. At that hearing, DHS initially recited the procedural history of the matter. DHS called the CUA case manager to testify. During the witness's testimony, the court interceded and the following exchange occurred:

> THE COURT: So let me just say this. Given that on December 16, 2015 Judge Johnson made the finding, no efforts are to be made to preserve the family, reunify [Child] with [Mother] we don't have to go through objectives on [Mother] and where she is and everything like that because that's the court order. So there was no appeal taken of that December 16th order and therefore that stands. So I don't need any objectives put on the record as to [Mother] because the Court has already made a finding that there are to be no efforts to reunify.
>
> [Mother's counsel]: Your Honor, just one clarification note. Your Honor is in agreement that [M]other can still make her own efforts, isn't that correct?
>
> THE COURT: I don't know what that looks like because right now she doesn't have visits because they've been

---

[2] The parties and the trial court did not discuss the scheduling of a hearing within thirty days of the December 16, 2015 hearing. *See* N.T., 12/16/15, at 27.

suspended at the recommendation of the therapist. And [the CUA case manager] just testified that that is still the recommendation of the therapist, no contact, no visits.

[Mother's counsel]: But, Your Honor, there's much more thorough recommendations in the report, that I think you were just handed, from [the Children's Crisis Treatment Center].

THE COURT: Okay.

[Mother's counsel]: You know, in terms of reasonable efforts even if the department has no affirmative obligation the parent's rights are not terminated yet and she has the right to make her own efforts.

THE COURT: Well considering that the order was made that there are no efforts to be made as to reunification, reunification is no longer the permanency goal. The permanency goal for [Child] now goes to either adoption or [permanent legal custody ("PLC")].

[Mother's counsel]: Your Honor, that goal was not changed and we didn't have a goal change hearing for that.

THE COURT: Well I'm changing the goal because essentially it was already done at the last court date. If [Mother] doesn't have to work on objectives and the Court has already said very clearly on December 16th that no efforts are to be made to preserve the family and reunify [Child] with [Mother], then essentially there is no reunification goal. The goal is adoption or PLC, whichever is appropriate in this case. And it really would be adoption because of the age of the child. So with that in mind—that decision was made before I got here.

[Mother's counsel]: So your ordering that the goal is changed to adoption today?

THE COURT: The goal has—even though Judge Johnson did not make the goal change. Given his order, reunification is not a viable option. So therefore today I'm making the order that the goal is now adoption for [Child] based on his previous ruling. He took testimony. He made that

- 5 -

> decision and so therefore, based on that, we don't have to get into objectives or anything like that. The goal is adoption.
>
> [Mother's counsel]: Your Honor, please note my objection.

N.T., 3/16/16, at 13-15.

Following the March 16, 2016 hearing, the trial court entered the instant permanency review order. The order indicated that the permanent placement goal was "return to parent or guardian" and added a concurrent placement plan of adoption. Order, 3/16/16, at 1. The court further directed:

> THE DHS GOAL IS CHANGED TO ADOPTION. THE CURRENT COURT GOAL IS REUNIFICATION UNTIL PETITIONS ARE FILED. A meeting among the parties is to occur within 30 days to discuss the appropriate goal. Reunification has been ruled [out[3]] as to [Mother] as a viable goal.

Order, 3/16/16, at 2.

Mother timely appealed from the March 16, 2016 order, and contemporaneously filed a Pa.R.A.P. 1925(a)(2)(i) statement. The trial court filed a responsive opinion, suggesting that the appeal be quashed based on Mother's failure to appeal the December 16, 2015 orders or, in the alternative, that the March 16, 2016 order be affirmed based on the court's

---

[3] Although the order states, "Reunification has been ruled as to [Mother] as a viable goal[,]" it is apparent that the court intended to rule out Mother as a viable resource for reunification. **See** N.T., 3/16/16, at 14 (noting "reunification is not a viable option"), 26. Therefore, we have altered the original order for the purpose of clarity.

consideration of the best interests of the child. **See** Trial Ct. Op., 5/16/16, at 6-7, 8.

Mother presents the following question for review: "Did the [trial court] err in [o]rdering, without a hearing, that reunification with Mother is ruled out, and that the DHS goal be changed to adoption?" Mother's Brief at 4. Mother argues that the trial court changed the permanency plan, and that she was entitled to a hearing under Section 6351(e) of the Juvenile Act to determine the factors set forth in Section 6351(f) and (f.1). **Id.** at 20. She further contends that the trial court erred by denying her "an opportunity to present evidence as to whether the goal should be changed." **Id.** Relief is due.

Preliminarily, we consider the trial court's suggestion that this appeal must be quashed. The court opines that the present appeal from the March 16, 2016 order is improper because Mother did not appeal the December 16, 2015 order. **See** Trial Ct. Op. at 6-7. The court suggests that it did not change the goal, but made explicit a change that was implicit in the December 16, 2015 aggravated circumstances order. We agree in part, disagree in part, and conclude that the appeal is properly before us.

It is well settled that jurisdictional issues, such as the appealability of an order, raise legal questions over which our review is *de novo* and plenary, and which may be considered *sua sponte*. **See Mensch v. Mensch**, 713 A.2d 690, 691 (Pa. Super. 1998). An order finding that aggravating

circumstances exist and suspending reunification efforts is an appealable order. *In re C.B.*, 861 A.2d 287, 289 n.1 (Pa. Super. 2004). Moreover, an order granting or denying a goal change, even if it maintains the *status quo*, is appealable. *See In re H.S.W.C.-B*, 836 A.2d 908, 909 (Pa. 2003). A notice of appeal, however, must "be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a).

We agree with the trial court that Mother can no longer appeal the court's December 16, 2015 order determining that (1) aggravated circumstances existed, (2) DHS need not undertake reasonable efforts toward reunification, and (3) visitation posed a grave threat to Child. Mother did not appeal within thirty days of that order. *See* Pa.R.A.P. 903(a); *In re C.B.*, 861 A.2d at 289 n.1. However, the trial court's March 16, 2016 order added the concurrent placement plan of adoption. *See* Order, 3/16/16, at 1. That change is appealable even if it purported to maintain the *status quo*. *See in re H.S.W.C.-B*, 836 A.2d at 909. Therefore, we decline to quash this appeal.

The Pennsylvania Supreme Court has stated that

> the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

The relevant provisions of Section 6351 are as follows:

- 8 -

**(e) Permanency hearings.—**

(1) The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child. In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity. If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian ad litem under section 6311 (relating to guardian ad litem for child in court proceedings) or, as appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

(2) If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child has been adjudicated dependent, the court shall then determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the child's parent, guardian or custodian or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as provided in paragraph (3).

42 Pa.C.S. § 6351(e)(1)-(2).

With respect to the scheduling of permanency review hearings, Section 6351(e) directs:

(3) The court shall conduct permanency hearings as follows:

* * *

(i) Within six months of:

* * *

(B) each previous permanency hearing until the child is returned to the child's parent, guardian or custodian or removed from the jurisdiction of the court.

(ii) Within 30 days of:

* * *

(B) a permanency hearing at which the court determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made and the permanency plan for the child is incomplete or inconsistent with the court's determination[.]

42 Pa.C.S. § 6351(e)(3)(i)(B), (ii)(B).

The purposes of the hearing are for the trial court to determine, *inter alia*:

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement[, and]

(4) The appropriateness and feasibility of the current placement goal for the child.

42 Pa.C.S. § 6351(f)(2)-(4).

- 10 -

Section 6351(f.1) further requires the trial court to determine:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child[, or]

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351(f.1)(1)-(2).

The Pennsylvania Supreme Court has stated:

concurrent planning involves a dual-track system by which agencies are encouraged to provide simultaneous services aimed at both reunification and adoption. . . . [C]oncurrent planning developed to address the problem of foster care drift, where children languished in the foster care system while their parents unsuccessfully attempted to regain custody. Rather than waiting to pursue adoption options until all reunification attempts fail, concurrent planning allows children to move more quickly through the dependency system and into the permanent placement best suited to their individual situation through simultaneous pursuit of reunification and alternative permanent placement.

*In re R.J.T.*, 9 A.3d at 1186 (citations omitted). "[C]oncurrent planning is a best practice" that "is especially useful early in the proceedings when it is unclear whether the parents will be able to learn to parent their children." *In re T.S.M.*, 71 A.3d 251, 269-70 (Pa. 2013). However, "concurrent planning should not be used to prolong instability for children when it becomes clear that parents will be unable to provide their children's basic needs in the near future." *Id.* at 270.

- 11 -

Following our review, we are constrained to conclude that the trial court abused its discretion. The court was charged with determining "the appropriateness, feasibility and extent of compliance with the permanency plan developed for the child" and "[t]he extent of progress made toward alleviating the circumstances which necessitated the original placement." *See* 42 Pa.C.S. § 6351(f)(2)-(3). The court, however, relied on the December 16, 2015 order finding that aggravated circumstances existed, no reasonable efforts at reunification were necessary, and visitation would pose a grave threat. In so doing, it took only limited testimony from DHS. *See* N.T., 3/16/16, at 10. Therefore, we agree with Mother that the court could not have considered properly whether the permanency plan developed for Child was appropriate or feasible, whether Mother was in compliance with the plan, and whether any progress had been made toward alleviating the circumstances necessitating the placement. *See* 42 Pa.C.S. § 6351(f)(2)-(3).

In sum, we conclude that the trial court failed to conduct an adequate hearing to address the plan change or find Mother was not a viable resource for reunification. Therefore, we must remand this matter for a new hearing. Because we decide this appeal on the basis that Mother is entitled to a new hearing, we do not express an opinion as to whether there was sufficient evidence justifying the court's decision to add the concurrent plan for adoption, its determination that Mother was not a viable resource, or its

suggestion that the change in the permanency plan was in the best interests of Child.

Order vacated.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2017