J-S05029-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF J.A., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.R. | : | No. 1451 WDA 2018 |

Appeal from the Order Entered September 17, 2018
in the Court of Common Pleas of Lawrence County Civil Division at
No(s): CP-37-DP-0000095-2013

| | | |
|---|---|---|
| IN THE INTEREST OF K.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.R. | : | No. 1452 WDA 2018 |

Appeal from the Order Entered September 17, 2018
in the Court of Common Pleas of Lawrence County Civil Division at
No(s): CP-37-DP-94-2013

BEFORE:    PANELLA, P.J., NICHOLS, J., and STRASSBURGER, J.*

CONCURRING AND DISSENTING MEMORANDUM BY STRASSBURGER, J.:
**FILED MAY 23, 2019**

If I were to reach the merits, I would agree with the Majority that the orders should be vacated and the case remanded to address the Children's appearance at the hearing.  However, I do not think the orders are appealable.  The Majority holds that the permanency review order from which Mother appeals is a final order pursuant to *In re H.S.W.C.-B.*, 836 A.2d 908 (Pa. 2003).  For the reasons that follow, I disagree and would quash this appeal.

*Retired Senior Judge assigned to the Superior Court.

In ***H.S.W.C.-B.***, our Supreme Court examined whether a party should be permitted to appeal from an order that denied petitions to terminate parental rights and change the permanency goal. This Court had quashed the appeal of the child welfare agency that filed the petitions because the order denying the petitions maintained the *status quo*. The child welfare agency appealed to our Supreme Court. The Supreme Court rejected the holding of our Court, reasoning that "[m]aintaining the *status quo* could put the needs and welfare of a child at risk" because if the same trial judge repeatedly and erroneously denies requests to change the permanency goal, the "improper order" would always be shielded from appellate review. ***H.S.W.C.-B.***, 836 A.2d at 910–11. The Court further reasoned that

> [a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered. Pa.R.C.P. 1915.10. Such an order may be modified at any time, provided the modification is in the best interest of the child. ***See*** 23 Pa.C.S. § 5310; ***Karis v. Karis***, [] 544 A.2d 1328, 1331–32 ([Pa.] 1988). If denial of a custody modification petition is final when entered, the denial of a proposed goal change or petition for termination of parental rights should logically be deemed final as well. … We now adopt the recent pronouncement in ***In re ALD***, [797 A.2d 326 (Pa. Super. 2002)], where the Superior Court declared all orders in termination matters final. An order granting or denying a status change, as well as an order terminating or preserving parental rights, shall be deemed final when entered. ***See id.***

***H.S.W.C.-B.***, 836 A.2d at 911.

In the years following ***H.S.W.C.-B.***, our Court has wrestled with how far to extend our Supreme Court's holding. The first precedential decision following ***H.S.W.C.-B.*** considered whether ***H.S.W.C.-B.*** should be extended

to a delinquency dispositional review hearing order maintaining a child's commitment to a treatment facility. *In re M.D.*, 839 A.2d 1116, 1122 (Pa. Super. 2003). Our Court observed that as in *H.S.W.C.-B.*, a determination that the order was interlocutory meant that a child's improper commitment could be shielded from appellate review, but it nevertheless declined to extend broadly *H.S.W.C.-B.*'s holding when doing so would have implications for Pa.R.A.P. 1701 and the authority of a trial court to proceed in matters on appeal. *Id.* This Court concluded that such an extension is "a task [] best left to the state Supreme Court or its Rules Committee." *Id.*

This Court exercised similar restraint in *In re J.S.C.*, 851 A.2d 189 (Pa. Super. 2004), when considering whether to extend *H.S.W.C.-B.* to a child welfare agency's appeal of a permanency review order granting expanded visitation to a dependent child's parent. After reviewing *H.S.W.C.-B.* and *M.D.*, we concluded

> that our Supreme Court's admonition in *H.S.W.C.-B.* [] that "[a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered" referred solely to orders entered pursuant to the Adoption Act, 23 Pa.C.S.[] § 2501, *et. seq.*, and is not controlling in our analysis of the finality of visitation orders entered following adjudication under the Juvenile Act, 42 Pa.C.S.[] § 6301, *et. seq.*[1] *See, e.g., M.D.*, 839 A.2d at 1122.

---

[1] Although I am bound to follow precedential decisions of this Court, I disagree with the panel's assessment in *J.S.C.* that our Supreme Court's statement in *H.S.W.C.-B.* must have been limited only to orders entered pursuant to the Adoption Act. It is unclear how the panel in *J.S.C.* arrived at that holding considering *H.S.W.C.-B.* involved orders entered pursuant to the Adoption Act **and** Juvenile Act.

*(Footnote Continued Next Page)*

> Therefore, as was the case in **M.D.**, we decline to consider prospectively whether the Pennsylvania Supreme Court would extend the holding of **H.S.W.C.-B.** [] to a case such as the one before us, where a children and youth agency appeals from an order granting visitation to the parent of a dependent child. **Id.,** 839 A.2d at 1122. This question is best left to our Supreme Court or its Rules Committee. **Id.,** 839 A.2d at 1122. Accordingly, we conclude that the order in the present case is not a "final order."

**J.S.C.**, 851 A.2d at 191.

Conversely, this Court justified the appealability of a permanency review order in **In re C.M.**, 882 A.2d 507 (Pa. Super. 2005) by reasoning that the order was reviewable because it "involved a change in C.M.'s placement status, in that it determined which of two potential adoptive homes would be selected for C.M.'s permanent placement" and was "the type of order, discussed by the Court in **H.S.W.C.-B.**, which "could put the needs and welfare of the child at risk" if it were not reviewable on appeal."

_(Footnote Continued)_ ────────────

Moreover, a close reading of **H.S.W.C.-B.** reveals that when our Supreme Court referred to visitation orders, it is most likely that the Court was referring to visitation orders entered under the Child Custody Act. Right after the Court references visitation and custody orders, the Court compares and contrasts the appealability of a denial of "custody modification" with the denial of "proposed goal change or petition for termination of parental rights." **H.S.W.C.-B.**, 836 A.2d at 911. Thus, the context of the statement causes me to question whether the Court really meant to hold that any order in any context relating to visitation or custody is final and immediately appealable when entered. However, a panel of this Court recently interpreted the Court's statement in **H.S.W.C.-B.** in just that fashion. **See In the Interest of N.M.**, 186 A.3d 998, 1006 (Pa. Super. 2018) (citing **H.S.W.C.-B.** for the proposition that all orders dealing with visitation or custody, with exception of enforcement or contempt proceedings, are final when entered).

***C.M.***, 882 A.2d at 513; ***see also In re C.B.,*** 861 A.2d 287, 289 n.1 (Pa. Super. 2004) (applying ***H.S.W.C.-B.*** without discussion to hold that permanency review order suspending parent's visits was a final appealable order); ***In re M.J.S.***, 903 A.2d 1, 2 (Pa. Super. 2006) (reviewing an appeal from vacation of an adoption decree despite contemplation of further proceedings because otherwise the needs and welfare of child were at risk).

In more recent years, the cases regarding a question of finality involved a change to the permanency goal, *i.e.*, a change in status in the case. ***See In Interest of Z.V.***, 158 A.3d 665, 668 (Pa. Super. 2017) (holding permanency review order was final and appealable because the order added a concurrent goal of adoption and made a finding that reunification had been ruled out as to Mother as a viable goal); ***In Interest of R.W.***, 169 A.3d 129, 130–31 (Pa. Super. 2017) (deeming permanency goal to have changed implicitly because juvenile court ordered agency to file termination of parental rights petition; thus, permanency review order was final and appealable because it involved a status change).

This past year, however, this Court examined ***H.S.W.C.-B.*** to determine whether a permanency review order that did not affirmatively change the status of the case was appealable. In ***N.M.***, ***supra***, the permanency review order maintained the child's placement in foster care with a permanency goal as reunification, but denied the parents' request to change the child's placement from foster care to kinship care. To begin, a

panel of this Court distinguished the case from **H.S.W.C.-B.** According to the **N.M.** panel, unlike **H.S.W.C.-B.**, the trial court in N.M.'s case "did not grant or deny a status change; the goal remained reunification throughout and [N.M.'s p]arents never asked for it to be changed." **N.M.**, 186 A.3d at 1006. Because N.M.'s parents requested only a placement change, this Court did not find **H.S.W.C.–B.** to be controlling.[2] **Id.** Thus, this Court appears to have interpreted the term "status change" narrowly to refer to a change in permanency goal status, not a change in the type of placement. *But see* **C.M. supra** (holding permanency review order was reviewable because it involved a permanency review order deciding which of two pre-adoptive families was in CM's best interest, and therefore was a change in C.M.'s "placement status"). **Id.**

Although the issue is not free from doubt, based upon the existing case law and the factual circumstances of this case, I believe the Majority is incorrect in holding that **H.S.W.C.–B.** controls the instant case. This case is an appeal from a permanency review order that maintained the permanency

---

[2] Ultimately, the **N.M.** panel determined that the permanency review order was reviewable because the trial court had terminated the parental rights to N.M. According to the **N.M.** panel, this meant "the entire record from the permanency hearings, including that from the [permanency review hearing at issue, was] now reviewable on appeal from the court's termination decrees." **Id.** In other words, the entry of the TPR order acted to finalize the interlocutory permanency review orders. The panel's ultimate holding in **N.M.** does not impact our analysis in the instant case because according to the record in the instant case, the petition to terminate parental rights is still pending.

goal as reunification with a concurrent goal of adoption. ***See generally*** Permanency Review Orders, 9/17/2018. The children's placement did not change. ***Id.*** The children still do not wish to visit with Mother and the juvenile court ordered no change in visitation. ***Id.*** Although the record for the termination matter is not before us, I discern from the record that the juvenile court has been presiding over simultaneous goal change and termination of parental rights hearings, approximately eight hearings have occurred over an extended period of time, and the decision regarding the agency's request to change the goal and the agency's petition for termination of parental rights was pending.

During the hearing, Mother testified that she had completed all requested programs except obtaining a second parental capacity evaluation from an agency-approved provider; she would like to be reunified with Children; she desires reunification therapy with Children; she desires visits with Children; and she had requested visits from the agency repeatedly. N.T., 9/17/2018, at 15-16. At the conclusion of the hearing, Mother's counsel argued the agency did not prove that reunification could not occur. ***See id.*** at 17. Even if we construed Mother's testimony as an affirmative request for return of Children, visitation with Children, and a particular service, it appears that these are not new requests from Mother. Nor were the requests from Mother based upon a change in circumstances or new information.

In my view, it is unclear how far our Supreme Court desired the holding in **H.S.W.C.-B.** to extend. Read strictly, "[a]n order granting or denying a status change" could apply to every permanency review hearing where a request relating to the state or condition of a child or parent's circumstances was made.

While I disagree with the **N.M.** panel that a placement change could never constitute a status change and render an order appealable, I also do not believe our Supreme Court intended to permit immediate review of each permanency review order. Even with our special expedited rules for cases designated as children's fast track cases, the wheels of appellate review turn too slowly to address effectively the vast majority of issues in dependency matters. While a juvenile court's decisions should not be shielded from review forever,[3] permitting appeals from each permanency review order runs

_____

[3] Indeed, I think this Court should decide the appealability in *status quo* permanency review cases on a case by case basis, lest an "improper order" be permanently shielded from appellate review. **See H.S.W.C.-B.**, 836 A.2d at 910–11. There are some cases where the goal remains the same for an extended period, no party is seeking to change the goal, and the trial court continually orders or refuses to order something that is or is not in the best interest of the child. Consider, for example, the case of a child for whom adoption or guardianship with a family member is not a feasible prospect. Some children remain in foster or congregate care for years, with the only truly final order being the last one before they age out of the system. There needs to be a balance between avoiding interference with the permanency review process on the one hand and permitting the trial court to have unfettered discretion by not reviewing orders on the other hand. I do not believe this case presents a situation like **H.S.W.C.-B.** where "[m]aintaining the *status quo*" for the time being is putting "the needs and welfare of a
*(Footnote Continued Next Page)*

counter to the pursuit of expeditious permanency for children. Were we to permit appeals from each six-month permanency review hearing (or in some counties, each three-month permanency review hearing), it would be impossible for the juvenile court to maintain regular reviews of the case without running afoul of Pa.R.A.P. 1701. Our Supreme Court in **H.S.W.C.-B.** was able to bypass that problem by instructing juvenile courts to continue to conduct regular permanency reviews while the goal change denial or grant is on appeal. However, as an error-correcting court, it would be outside our authority to impose such a directive were we to permit appeals of all permanency review hearings. Further, the detriment of delay is not outweighed by the benefits of prompt review, as most decisions by the Juvenile Court are reviewed only for an abuse of discretion, and we often must defer to the assessments of the juvenile court, which has firsthand experience with the family.

By permitting review of this permanency review order, which occurred following a permanency review hearing in which no new evidence or requests were made and which occurred in the midst of ongoing hearings[4]

*(Footnote Continued)* ───────────────

child at risk," *id.*, since appealable orders (*i.e.*, the orders from the termination and goal change hearings) were pending.

[4] It is concerning that the termination and goal change hearings have stretched out for such an extended period, leaving the children and Mother in a state of limbo. Obviously, it is imperative to come to the correct result after careful examination of all of the relevant evidence, and in some cases, multiple hearings are warranted. However, "courts must keep the ticking

*(Footnote Continued Next Page)*

designed to review the history of the case, I believe the Majority's holding opens the door to rendering all permanency review orders immediately appealable. In short, if this order is appealable, it is difficult to fathom a permanency review order that would not be immediately appealable.[5] Therefore, I would quash this appeal because the order appealed from is an interlocutory order.[6]

_(Footnote Continued)_ ————————

clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." **In re T.S.M.**, 71 A.3d at 269. Accordingly, our Supreme Court expects "trial courts to control these proceedings, focus the issues, direct the testimony, and decide matters[, because p]ermanency for the children demands no less." **Id.** at 260 n.19. I note, however, that the trial court's failure to move along the termination of parental rights process is not an issue Mother raises in this appeal.

[5] If all permanency review hearings were immediately appealable, the eloquent words of Justice (later Chief Justice) O'Brien would certainly ring true: "The bifurcated appeal foisted upon the courts can only be termed a judicial Hydra. Would that a Hercules could appear … to slay this monster." **Hession Condemnation Case,** 242 A.2d 432, 437 (Pa. 1968) (O'Brien, J., dissenting). Suffice it to say that I agree with Justice O'Brien that "[i]t is more important to prevent the chaos inherent in bifurcated, trifurcated, and multifurcated appeals than it is to correct each mistake of a trial court the moment it occurs." **Calabrese v. Collier Twp. Mun. Auth.**, 248 A.2d 236, 238 (Pa. 1968) (O'Brien, J., dissenting).

[6] The order is also not a collateral order pursuant to Pa.R.A.P. 313, because it deals with matters at the heart of the proceeding.