J-S10013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: A.Z., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: J.Z., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3106 EDA 2022 |

Appeal from the Order Entered November 7, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0001210-2020

BEFORE: PANELLA, P.J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY PANELLA, P.J.: **FILED MAY 23, 2023**

J.Z. ("Mother") appeals from the Philadelphia County Court of Common Pleas' November 7, 2022 permanency review order which kept the permanency goal for J.Z.'s child, A.Z., ("Child"), as reunification with Mother, but made a specific notation that there was a concurrent placement plan of adoption in place. The court held a permanency review hearing on the same day it entered this order. Mother argues, in essence, that this hearing was inadequate and did not provide a sufficient basis for the court to enter its order, which Mother contends changed Child's permanency goal from reunification to adoption. We disagree, and therefore affirm.

The facts leading up to this appeal are largely undisputed. Child was born in 2016. In November 2020, the Philadelphia Department of Human Services ("DHS") received a General Protective Services report alleging

Mother suffered from mental health issues and Child lacked adequate food and medical care. DHS interviewed Mother, and obtained an Order of Protective Custody and placed Child with her maternal grandmother. On November 25, 2020, DHS filed a dependency petition.

Meanwhile, the Community Umbrella Agency ("CUA") set several objectives for Mother at its December 9, 2020 Single Case Plan ("SCP") meeting. Those objectives included: the completion of a behavioral health evaluation; attendance of parenting classes; and supervised visitation with Child.

The trial court ultimately adjudicated Child dependent. The court ordered Mother to have weekly, supervised, line-of-sight and sound-of-hearing visits with Child, and also ordered Mother to undergo a Parenting Capacity Evaluation (PCE). Child's permanency goal was listed as reunification with Mother.

The court held permanency review hearings on July 12, 2021, October 12, 2021, January 10, 2022, and April 11, 2022. The permanency goal for Child remained reunification with Mother in each of the orders entered following those hearings.

On June 8, 2022, after Child had been in placement for over 18 months and because Mother had not fully complied with her objectives, DHS filed petitions to change Child's permanency goal from reunification with Mother to adoption and to involuntarily terminate Mother's parental rights. The trial

court held a hearing on June 27, 2022, but because Mother's PCE remained outstanding, the hearing was conducted as a permanency review hearing. Child's permanency goal remained reunification, and a goal-change hearing was scheduled for November 7, 2022.

At the hearing on November 7, Mother's PCE still had not been scheduled and DHS requested that the hearing, although scheduled as a goal-change hearing, proceed as a permanency review hearing. *See* N.T., 11/7/2022, at 3-4. The trial court then heard testimony from the CUA case manager, Jadanne Vossah. Vossah testified that Child was doing well in her placement with her maternal grandmother, and that Mother had completed family school and continued to have supervised visits with Child that were going well. *See id.* at 8, 11. Vossah also testified that although Mother was enrolled in mental health treatment, Vossah was concerned that Mother's therapist had not addressed the dependency concerns which brought Child into care. *See id.* at 9. According to Vossah, she had discussed those concerns with Mother's therapist, and the therapist planned to address them with Mother. *See id.* Vossah maintained that Child wished to continue to live with her grandmother, but also wanted to continue her visits with Mother. *See id.* at 10.

Immediately after the hearing, the court entered a permanency review order, which the court explained as follows:

> [T]he Court ordered [Child] to remain as committed and placed with maternal grandmother. The permanence placement goal for [Child] remained reunification. Mother's visits were expanded to supervised twice weekly in the community, line-of-sight, sound-

- 3 -

> of-hearing, with one of those visits being at [Child's] discretion. The Court also ordered DHS/CUA to discuss with Mother's therapist how [Child] came into care, and to follow up with Mother's PCE. DHS filed the Goal Change/TPR Petitions on June 8, 2022, thus the November 7, 2022, court order stated that the concurrent placement plan for [Child] was adoption. (*See* Permanency Review Order, 11/7/22). The matter was given a court date of February 6, 2023 and scheduled [as] a Goal Change Hearing.

Trial Court Opinion, 12/28/22, at 5. Specifically as to Child's permanency goal and planning, the order stated:

**CURRENT PERMANENT PLACEMENT GOAL**

The current placement goal for the child is return to parent or guardian.

**CONCURRENT PLACEMENT PLAN**

The concurrent placement plan for the child is Adoption.

Permanency Review Order, 11/7/2022, at 1-2.

Mother filed a timely notice of appeal from this order, along with her Pa.R.A.P. 1925(b) statement of errors complained of on appeal. In her statement, Mother raised the single issue that the trial court had erred by changing Child's permanency goal from reunification and ordering a concurrent plan of adoption without first holding a hearing on that goal change. The trial court, in its Rule 1925(a) opinion, found Mother's claim to be meritless. The trial court explained that Mother's claim was based on a misunderstanding of its November 7, 2022 order in that the order did not change Child's permanent placement goal to adoption, but instead, retained

the goal of reunification. The trial court also opined that because the November 7, 2022 order had merely maintained the *status quo*, it was not appealable as a final order.

On appeal, Mother raises this issue in her statement of questions presented for review:

1. Did the trial court err when it added the goal of "concurrent plan" for adoption, without a hearing?

Appellant's Brief at 8 (trial court's answer, mistakenly reported as answered in the affirmative by the trial court, omitted). Although Mother's question challenges the trial court's alleged failure to hold any hearing before entering its November 7, 2022 order, Mother's argument section suggests a different argument. There, Mother cites general law regarding dependency, permanency review hearings, and concurrent planning. She then recites the testimony given by the CUA case manager and ends with this conclusory argument:

> Here, the court relied on the limited testimony from DHS. …[T]he court could not have considered properly whether the permanency plan developed for Child was appropriate or feasible[.] Mother was in compliance with the plan, and Mother was making positive progress toward alleviating the circumstances necessitating the placement. ***See*** … ***In [the] Interest of Z[.]V[.]*** 158 A.3d 665 [(Pa. Super. 2017)].
>
> Therefore the trial court failed to conduct an adequate hearing to address the plan change or [to] find Mother was not an available resource for reunification. Therefore, this matter must be remanded for a new hearing.

Appellant's Brief at 18-19. Based on these assertions, it appears Mother is arguing that the evidence from the hearing held by the trial court was inadequate to support its order, which Mother alleges changed Child's permanency goal of reunification.

We review a trial court's decision in dependency matters for an abuse of discretion. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Dependency matters are controlled by the Juvenile Act, which has a stated purpose of preserving the unity of the family whenever possible. *See* 42 Pa. C.S.A. § 6301(b)(1). If a trial court finds a child to be dependent, as defined by Section 6302 of the Juvenile Act, the court must make an appropriate disposition based on the safety, protection and physical, mental and moral welfare of the child. *See id.* at § 6301(a). Such a disposition can include removal of the child from the parent's care. *See id.*

The Juvenile Act also requires a court to hold regular permanency hearings for dependent children to determine, *inter alia*, the appropriateness, feasibility and extent of compliance with a child's current permanency plan, the extent of progress made towards alleviating the circumstances which necessitated the original placement, and the appropriateness of the current placement goal. *See* 42 Pa. C.S.A. § 6351(f)(2)-(4). At the hearing, the court must assess "whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa. C.S. § 6351(e). In cases where reunification is best suited to the child's welfare,

Section 6351(f.1) requires the court to determine "if and when" the child will be reunified with their parent. *See* 42 Pa. C.S.A. § 6351(f.1)(1). In cases where reunification is not best suited to the child's welfare, the court must make a determination regarding "if and when" the child will be placed for adoption. *See id.* at § 6351(f.1)(2).

Concurrent planning is a practice, mandated by federal statute, which allows child welfare service agencies to plan for the adoption of a child even when the child's permanency goal remains reunification with the parent.[1] Our Supreme Court has described concurrent planning as a "dual-track system under which [agencies] provide services to parents to enable their reunification with their children, while also planning for [adoption] should reunification fail." *R.J.T.,* 9 A.3d at 1183 (citation omitted). In this way, concurrent planning is geared towards preventing children from languishing in the foster care system. *See id.* at 1186. "Rather than waiting to pursue adoption options until all reunification attempts fail, concurrent planning allows children to move more quickly through the dependency system and into the permanent placement best suited to their individual situation through simultaneous pursuit of reunification and alternative permanent placement." *Id.* Concurrent planning does not replace reunification as a goal but rather,

---

[1] The Adoption and Safe Families Act of 1997, Pub.L. 105-89, tied the availability of federal funding to a state's adoption of a plan that encompassed several requirements, including concurrent planning. *See In re Adoption of S.E.G.*, 901 A.2d 1017, 1019 (Pa. 2006).

"keep[s] alive the potential of reunification." *Id.* at 1191. Given the benefits of concurrent planning, the Court in *R.J.T.* specifically encouraged trial courts to address the issue of concurrent planning in their orders in dependency cases. *See id*.

Here, in arguing that the hearing held by the trial court on November 7, 2022 was insufficient to support changing Child's permanency goal in its November 7, 2022 order, Mother fails to even acknowledge the trial court's explicit finding that Mother's argument is premised on a misunderstanding that its order changed Child's permanency goal from reunification to adoption. In its Rule 1925(a) opinion, the court specifically stated that following the hearing on November 7, 2022, the court found that reunification was not appropriate at that time, but that the "permanency goal for [Child] remained reunification." Trial Court Opinion, 12/28/2022, at 9; *see id.* at 11 (reiterating that "a decision regarding whether to change Child's goal from reunification to adoption has not been made as this issue has not [yet] been heard by [this] court"). The court acknowledged that because DHS had previously filed goal-change and termination petitions that had not yet been litigated, it had added a notation in its order that DHS was concurrently planning for adoption. However, the court explained that such a notation had not uprooted or replaced reunification as Child's permanency goal:

> Concurrent planning is a … best practice that allows DHS to continue making reasonable efforts to reunify families while simultaneously trying to identify other appropriate permanent placements for the child. Adding a concurrent  permanency plan

to a child's case does not mean that reunification is no longer a viable option. Rather, while reunification is the primary permanency goal in cases, concurrent planning can be used to expedite permanency for the child if reunification should fail.

… A goal change hearing has not yet occurred for this case. [Child's] permanency goal remains reunification until such a hearing occurs to determine whether that is the appropriate permanency goal and if reunification is in Child's best interest.

*Id.* at 10. The court noted that it had scheduled the next hearing, and had listed that hearing as a goal-change hearing.

DHS reiterates what the trial court found - that the trial court's order did not change Child's permanency goal to adoption nor did it direct DHS to add a concurrent goal of adoption. "Rather, the trial court merely recognized the current posture of [Child's] dependency matter: that her permanency goal was and remained reunification; and that DHS was concurrently planning for adoption, as evidence[d] by its filing of goal change and termination of parental rights petitions." Appellee's Brief at 9 (emphasis on certain words omitted).

DHS also notes that Mother generally cites to *Z.V.* in support of her bald assertions, but argues, as does Child's guardian *ad litem,* that *Z.V.* is easily distinguishable from this matter. As DHS explains:

In *Z.V.*, the lower court entered an order directing the county agency to add a concurrent goal of adoption without holding a full hearing. *See Z.V.*, 158 A.3d at 666. There, the lower court reasoned that reunification [with the mother] was no longer viable because it had previously found that aggravated circumstances existed; that the county agency need not make reasonable efforts towards reunification; and that visitation posed

a grave threat to the child. [**See id.**] at 667-668. Critically, the county agency had not yet filed goal change petitions and the lower court took no testimony on [the m]other's compliance and progress with her objectives. Regardless, the lower court ordered "THE DHS GOAL IS CHANGED TO ADOPTION. THE CURRENT GOAL IS REUNIFICATION UNTIL PETITIONS ARE FILED … Reunification has been ruled [out] as to [the mother] as a viable goal." **Id.** at 668 [(capitalization in original; added emphasis omitted)]. In vacating and remanding the order, [the Superior] Court explained that the lower court "relied on the [prior] orders finding that aggravated circumstances existed, no reasonable efforts were necessary, and visitation would pose a grave threat" and failed to consider the [Section] 6351(f) factors that it was required to do at every permanency review hearing. **Id.** at 671.

In contrast, here, DHS had already begun concurrently planning for adoption. Over two years had passed since DHS took custody of [Child] in November 2020 and [Mother] had only made moderate progress towards reunification. Thus, DHS filed a goal change petition. While DHS could have moved on its petition at the November 7, 2022 hearing, it elected not to and a permanency review took place.

CUA reported that Mother had complied with some of her objectives, but still needed to complete a PCE, more meaningfully address why Child was removed from her care in therapy, and progress beyond supervised visits. Based on this testimony, the trial court granted DHS'[s] request for Child to remain committed to its custody and supervised visitation to continue. The written order reflected that Child's placement goal remained reunification; and that DHS was pursuing a concurrent placement plan of adoption. The following hearing was scheduled for a goal change proceeding on February 6, 2023.

In fashioning this order, the trial court clearly considered the required factors under [Section] 6351(f). Child's placement continued to be necessary and appropriate because [Mother] still needed to work on her SCP objectives, particularly mental health, the PCE, and visitation, before reunification could occur. Unlike the lower court in **Z.V.**, the trial court did not order DHS to add a concurrent goal of adoption or file goal change petitions; did not declare a goal change; and took relevant testimony to support its oral and written orders.

- 10 -

Appellee's Brief at 11-13 (some citations to notes of testimony and record omitted).

We agree with DHS that **Z.V.** is clearly distinguishable from the instant matter, given that the lower court in **Z.V.** specifically changed Z.V.'s goal to adoption and found that reunification was no longer a viable option. We also agree with DHS that the record supports the trial court's finding that it did not do either of those things in the order Mother now challenges. While it is true the trial court's order did note DHS was concurrently planning for adoption, **R.J.T.** made clear that concurrent planning "keep[s] alive the potential for reunification," 9 A.3d at 1191, and does not, as Mother seems to suggest, translate to a finding that Mother "was no longer a viable option for reunification." Appellant's Brief at 19. In the end, we see no abuse of discretion in the court's finding that the hearing it conducted prior to entering its November 7, 2022 order was sufficient and that a goal-change hearing was not necessary before it entered that order because the order did not change Child's goal. Mother's undeveloped assertions do not convince us otherwise.

We briefly address the issue of jurisdiction, which the trial court raised in its opinion. We recognize that jurisdiction is typically addressed as an initial matter, but the trial court's concerns with jurisdiction arose only because of its finding that the November 7, 2022 order did not, contrary to Mother's assertions, change Child's permanency goal but simply continued the goal of reunification. As such, the trial court questioned whether the order was final

or otherwise appealable, citing **In the Interest of N.M.**, 186 A.3d 998 (Pa. Super. 2018). We do not agree that **N.M.** strips this Court of jurisdiction to consider this appeal.

In **N.M.**, this Court found that the permanency review orders under appeal in that case were not final and appealable because they did not grant or deny a change in the status of N.M.'s goal; the permanency goal remained reunification throughout the orders; N.M's parents had merely requested a placement change from foster to kinship care at the hearing; and the orders did not affect custody or visitation. **See id.** at 1006-1008. Notably, the permanency review orders in **N.M.** also did not involve concurrent planning. In contrast, the order at issue in this case, as our previous discussion makes abundantly clear, addressed concurrent planning. Our Court has found that we have jurisdiction over an appeal of a permanency review order which adds a concurrent placement plan, even if it maintains the *status quo*. **See Z.V.**, 158 A.3d at 669.

We therefore disagree with the trial court that we do not have jurisdiction to consider this appeal, but we do agree with the trial court that the appeal lacks merit for all the reasons discussed above. The underlying premise of Mother's undeveloped claim is that the court changed Child's permanency goal and found Mother was no longer a resource for reunification, but the record supports the trial court's finding that this was not the effect or the intent of its November 7, 2022 order. As the trial court made clear,

- 12 -

reunification remains Child's permanency goal until a goal-change hearing is held to determine if reunification with Mother is not a viable option and Child's goal should be changed to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023