J-A03003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: R.N.H., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 655 MDA 2019 |

Appeal from the Order Entered April 17, 2019
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-JV-0000224-2018

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 25, 2020**

R.N.H. appeals from the order adjudicating her delinquent after she admitted to committing one count of simple assault (M-2).[1] Because the order from which R.N.H. appeals is not a final order of disposition, we quash the appeal.

R.N.H., a fifteen-year-old female, suffers from severe eating disorders and, at the time of the incident in question, weighed only 97 pounds. R.N.H. also abuses alcohol, marijuana, tobacco and prescription pills (Xanax and Seroquel). On June 20, 2018, R.N.H. was taken to the emergency department of the Hershey Medical Center (Hershey) in Dauphin County due to severe complications from her eating disorders, where she presented with heart issues and low blood pressure (76/60). In the emergency room, R.N.H. had

---

[1] 18 Pa.C.S. § 2701(a)(1).

a "melt down," flailing, kicking, spitting and yelling at emergency room personnel while they attempted to treat her. Hospital personnel put R.N.H. in a "4-point restraint," however she continued to resist treatment. Affidavit of Probable Cause, 6/20/18, at 1. R.N.H. dug her nails into one security officer's hand and finger, breaking his skin. R.N.H. also punched and "head-butted" this same officer in the stomach. Two of the assaulted hospital employees, both security officers, were admitted to the hospital to receive medical treatment for their injuries, which included a possible stress fracture and pinched nerve. As a result of her actions, on July 30, 2018, a delinquency petition was filed against R.N.H., charging her with 6 counts of aggravated assault (F-2) under 18 Pa.C.S.A. § 2702(a)(3) and disorderly conduct (M-3), 18 Pa.C.S.A. § 5503(a)(2).[2] The petition was transferred to Cumberland County, where R.N.H. resides.

In October 2017, prior to the current adjudication stemming from the Hershey incident, R.N.H. had been declared dependent and entered into a consent decree,[3] conditioned on her receiving psychiatric, family-based and drug and alcohol treatment. As of February 2018, R.N.H. was living at an in-patient eating disorder center in Connecticut. Between October 2018 and March 2019, the court held five status hearings in the current case where it

---

[2] Section 2701(a)(3) applies to an individual who "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to . . . [e]mergency medical services personnel . . . while in the performance of duty." 18 Pa.C.S.A. § 2701(a)(3).

[3] The court extended R.N.H.'s consent decree on April 17, 2018.

was apprised of and updated with regard to R.N.H.'s health, safety, location and progress with on-going treatment.

On April 17, 2019, R.N.H. appeared before the Honorable Thomas A. Placey, for what was originally designated a status hearing. The hearing, however, was converted into a fact-finding/admission and adjudication. R.N.H.'s mother and grandmother were present at the hearing. At the proceeding, the district attorney stated that R.N.H. would be admitting to having committed simple assault, a second-degree misdemeanor, and to the following undisputed facts:

> [O]n June 20th or 2018, [R.N.H.] was at Hershey Medical Center Emergency Department in Derry Township, Cumberland County. While she was there she was receiving treatment and she did resist treatment by striking, spitting, and pushing staff members who [were] there. This did result in some bruising, scratching, and injuries to the staff members who were there.

N.T. Status Hearing/Proceedings, 4/17/19, at 3. The court fully colloquied R.N.H. on the record, asking her if her admission "was something [she] was doing on [her] own," whether it was her signature on the written admission form, and whether counsel had discussed the contents of the form with her. *Id.* at 5. The court explained the charge of simple assault, told R.N.H. that her behavior caused other people injuries, and explained that she did not have to tender an admission. *Id.* Counsel for R.N.H. admitted that the juvenile acted recklessly and that she was "prepared to take responsibility[,]" but that she was "remorseful because she didn't really mean to hurt anybody." *Id.* Finally, Judge Placey explained that R.N.H. was entitled to a finding of fact

- 3 -

hearing where she could bring in witnesses and testify in lieu of making an admission. *Id.* at 6-7.

The juvenile court judge next explained that he "want[ed] to give [R.N.H.] the opportunity to prove [her]self to [him] and to [her] attorney and [her] family that [she] can and will and [is] getting better." *Id.* at 8. Judge Placey stated:

> I do delinquency. . . . And I am not going to make any ruling on the delinquency here at this point as long as you are in treatment, complying with treatment, and getting things done. If you're making progress, I'm happy. I don't have to jump in. It is when you're not making progress that I will jump in. So your life isn't going to change from what you are doing now.

*Id.* at 8-9. Judge Placey also told R.N.H. that a different judge deals with dependency determinations and that if R.N.H. "does not have additional situations – charges[--] that they are looking to expunge th[e Hershey] case." *Id.* at 9. The court then accepted R.N.H.'s admission,[4] *id.* at 10, and informed R.N.H. that it was "just going to pocket this for now, unless there's something else you need me to do today?" *Id.* At that point, the Commonwealth

_____

[4] Pursuant to an agreement with the Commonwealth, R.N.H. signed an admission colloquy form admitting to having committed the delinquent act of simple assault, a second-degree misdemeanor, indicated that she was currently being treated for anorexia at Cumberland Hospital, and noted that she had been promised that the adjudication would be expunged if she incurred no new charges. R.N.H. initialed each page of the written colloquy; R.N.H. and her attorney both signed the colloquy, indicating that they had reviewed it and that they understood it. The colloquy also informed R.N.H. that if she changed her mind about admitting to the charge, before the judge decided her disposition or consequences, she could ask the judge to let her take back her admission. *See* Admission Colloquy Form, 4/17/18, at ¶ 19.

interjected and asked the court to make an adjudication that day. *Id.* R.N.H.'s counsel asked that the court not make an adjudication because he was not ready to proceed and wanted to see reports from Cumberland Hospital and R.N.H.'s child services caseworker. *Id.* at 10-11.

Despite R.N.H.'s counsel's repeated objections and protestation that he would appeal the decision were the court to adjudicate R.N.H. at that moment, the court proceeded to adjudicate R.N.H. delinquent. Specifically, the court entered an order adjudicating R.N.H. delinquent, acknowledging that her admission was "knowingly, intelligently and voluntarily made and [that it] conform[ed] to the requirements of Pa.R.J.C.P. [] 407(A)(1)," and finding that R.N.H. was "in need of treatment, supervision or rehabilitation." N.T. Status Hearing/Proceedings, 4/17/19, at 13. The court's order noted that R.N.H. was to "continue on with the dependency treatment that she is [currently receiving] until successful completion." *Id.* Finally, the order indicated that "disposition of the Juvenile is deferred." *Id.*

R.N.H. filed a timely notice of appeal from the April 17, 2019 adjudication of delinquency and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On May 23, 2019, the court sent copies of an amended adjudicatory/dispositional hearing order to the parties.[5] That amended order is identical in all respects to the court's April 17, 2019 order, except for the addition of the following sentence: "The

_____

[5] The docket entries in the certified record on appeal end with the court's April 17, 2019 order.

Juvenile is placed on probation until further order of this Court, under and subject to the rules and regulations of the Cumberland County Juvenile Probation Office."  Order, 5/23/19, at 1.

On appeal, R.N.H. raises the following issues for our consideration:

(1)    Did the Commonwealth fail to carry it[]s burden of beyond a reasonable doubt when it requested the trial court find [R.N.H.] a delinquent child and, therafter, did not provide any evidence, either documentary or in person?

(2)    Did the [t]rial [c]ourt err[] in making a finding that [R.N.H.] was in need of treatment, supervision or rehabilitation . . . when it failed to provide a dispositional hearing pursuant to [Pa.R.J.P.] 409 in violation of her due process rights.

Appellant's Brief, at 4.

Prior to addressing the merits of R.N.H.'s issues on appeal, we must first determine whether the appeal has been taken from a final order, a question that implicates our Court's jurisdiction.  We must look beyond the technical effect of the adjudication to its practical ramifications to ascertain what is considered a final appealable order.  **In the Interest of C.A.M.**, 399 A.2d 786, 787 (Pa. Super. 1979).

The law is clear that the "Juvenile Act itself does not provide a right of appeal."  **In re M.D.**, 839 A.2d 1116, 1118 (Pa Super. 2003), citing **In the Interest of McDonough**, 430 A.2d 308, 312 (Pa. Super. 1981).  Rather,

[A] juvenile's right of appeal stems from our state constitution[:]

Article V Section 9 of the Pennsylvania Constitution provides that "there shall be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court."  The Juvenile Court is a court of record and pursuant to Pa.R.A.P. 341, [an] appeal may be taken as of right from any final order of an administrative agency

> or lower . . . court. The final [o]rder of a [j]uvenile [c]ourt is the [d]ispositional [o]der as to the [d]elinquent [c]hild, pursuant to 42 Pa.C.S. § 6352.

*In re M.D.*, 839 A.2d at 1118, citing *Commonwealth v. Clay*, 546 A.2d 101, 103 (Pa. Super. 1988).[6] *See Commonwealth v. S.F.*, 912 A.2d 887, 889 ("In juvenile proceedings, the final [o]rder from which a direct appeal may be taken is the [o]rder of [d]isposition, entered after the juvenile is adjudicated delinquent.").

On February 13, 2020, our Court issued a rule to show cause as to the basis of this Court's jurisdiction over the matter where the appeal did not appear to be from a final order of disposition, but rather from an order adjudicating R.N.H. delinquent, finding that she is in need of "care, treatment, or rehabilitation" and deferring disposition of R.N.H. *See* Order/Rule to Show Cause, 2/13/20. On February 19, 2020, the juvenile defender filed a response to the rule to show cause, stating that once the trial judge "realiz[ed] that he did not properly enter his Order, Judge Placey amended his order of April 17, 2019, and did place the juvenile on probation." Answer to Rule to Show Cause, 2/19/20, at ¶ 3.

While we are well aware of the court's amended order dated May 23, 2019, which states that it is placing R.N.H. on probation, we do not find that it is a valid, final dispositional order. First, the order was entered *after* R.N.H.

---

[6] In *In re Smith*, 573 A.2d2d 1077, 1082 n.5 (Pa. Super. 1990), our Court stated in a footnote that to the extent that *Clay* is inconsistent with the holding of *Smith* with regard to preserving issues for appeal in a juvenile matter, "it is disapproved."

filed her notice of appeal. Second, there is no docket entry for the court's "amended" order. Unlike the other docket entries and the court's April 17, 2019 order from which the instant appeal was filed, the amended order does not contain a date and time stamp from Cumberland County Clerk of Court indicating that the order has been filed in the trial court.[7]

Also relevant to our disposition today is the Juvenile Act's requirement that a juvenile judge give a statement of reasons in open court before entering a juvenile disposition:

> (c) Required statement of reasons. — **Prior to entering an order of disposition under subsection (a), the court shall state its disposition and the reasons for its disposition on the record in open court, together with the goals, terms and conditions of that disposition.** If the child is to be committed to out-of-home placement, the court shall also state the name of the specific facility, or type of facility, to which the child will be committed and its findings and conclusions of law that formed the basis of its decision consistent with subsection (a) and section 6301, including the reasons why commitment to that facility, or type of facility, was determined to be the least restrictive placement that is consistent with the protection of the public and best suited to the child's treatment, supervision, rehabilitation and welfare.

42 Pa.C.S. § 6352(c) (emphasis added). The court's after-the-fact attempt to amend its original order to rectify any jurisdictional issues on appeal cannot be deemed harmless error. Juvenile court judges are required to explain **in open court** and in front of the juvenile the reasons for its specific disposition, "together with the goals, terms, and conditions of that disposition." 42 Pa.C.S. § 6352(c). Such a process undoubtedly ensures that the juvenile's disposition

---

[7] In fact, all that is noted is "Copies delivered May 23, 2019" at the bottom of the order.

is "consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare." *Id.* at § 6352(a)(3). The consequences of a juvenile disposition are significant and require a minimum level of notice and due process to the juvenile which is ensured by the required procedure under section 6352(c).

Accordingly, we conclude that the appeal in the instant case is not from an order of initial disposition. Rather, it has been taken from an order adjudicating R.N.H. delinquent and finding that she is in need of "care, treatment or rehabilitation." In fact, the April 17, 2019 order explicitly states that "the disposition of the Juvenile is deferred." Order (Amended), 4/17/19, at 1. We find that the instant appeal has been taken from a non-final interlocutory order, and thus, is premature. *In re C.A.M.*, *supra* at 787 (Juvenile Act does not provide for appeal as of right from preliminary finding of dependency). Accordingly, we must quash. *See In Interest of McDonough*, 430 A.2d at 333 ("To allow an appeal from the adjudication of delinquency would severely interfere with the purposes of the Juvenile Act.").[8]

Appeal quashed. Jurisdiction relinquished.

---

[8] We recognize that if a trial court wishes to supervise a juvenile for a period of time prior to entering a final order, the Juvenile Act provides several alternatives by which to do so, including the procedure employed in the present case—continuation of a dispositional hearing. *See* 42 Pa.C.S. § 6341(e); *In the Interest of M.M.*, *supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/25/2020</u>