J-S24026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW J. VASQUEZ | : | |
| | : | |
| Appellant | : | No. 1350 WDA 2024 |

Appeal from the Judgment of Sentence Entered May 11, 2020
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-MD-0000309-2020

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: October 28, 2025**

Matthew J. Vasquez appeals *pro se* from the judgment of sentence imposed on six counts of indirect criminal contempt. ***See*** 42 Pa.C.S.A. § 4132(2). He argues the evidence was insufficient to sustain the convictions, his sentence is illegal, and the court denied him the right to a trial by jury and the right to trial counsel. We affirm.

This case arose from another case in which Vasquez was convicted of aggravated assault, conspiracy to commit aggravated assault, and simple assault ("the assault case").[1] The trial court summarized the factual and procedural history of the assault case as follows:

> The charges and conviction for Aggravated Assault and Conspiracy arose out of an incident on April 18, 2019, when seven (7) members of the Pagans Motorcycle Club, including [Vasquez], entered the Slovak Club, a private club located in Charleroi,

---

[1] The assault case is docketed in the trial court at CP-63-0001486-2019.

Washington County, and ruthlessly attacked the victim, Troy Harris, without provocation. The injuries were so severe that, but for immediate medical attention, Troy Harris would have died. Although he survived, Harris remained permanently disabled and was unable to testify at trial. The entire assault was captured on the video surveillance cameras of the Slovak Club.

As a result of the assault, [Vasquez] and the other six (6) assailants, as well as two (2) other members of the Pagans Motorcycle Club hierarchy were arrested and charged with criminal attempt to commit homicide, aggravated assault, conspiracy to commit aggravated assault and related charges. In addition, three (3) other individuals, not members of the Pagans, including [Vasquez's] then fiancé[e] were charged with conspiracy. Due to the nature of the charges and their affiliation with the Pagans' outlaw motorcycle gang, upon arraignment, [Vasquez] and his co-conspirators were ordered to be held without bond. In addition, the court expressly ordered as a bond condition that all of the co-conspirators, including [Vasquez], have no contact with any of the victims, witnesses or their co-conspirators.

On February 7, 2020, following a jury trial on February 3rd through the 7th, [Vasquez] was found guilty of Aggravated Assault, Conspiracy to Commit Aggravated Assault, and Simple Assault. Following the verdict, the court ordered that [Vasquez] remain confined without bond as before.

Trial Ct. Op., filed Jan. 31, 2025, at 2-3.[2]

After he was convicted in the assault case, but before sentencing, Vasquez repeatedly contacted a witness "who had been charged as a co-conspirator and who testified against [Vasquez] at trial," his ex-fiancée Jamie Granato. *Id.* at 3. The Commonwealth charged Vasquez with six counts of indirect criminal contempt.

---

[2] We affirmed Vasquez's convictions in the assault case, and the Supreme Court denied his petition for allowance of appeal. *See Commonwealth v. Vasquez*, No. 190 WDA 2021, 2023 WL 2752642 (Pa.Super. filed April 3, 2023) (unpublished mem.), *appeal denied*, No. 179 WAL 2023 (Pa. filed Mar. 12, 2024).

At a hearing,[3] the Commonwealth presented "the testimony of the victim, Ms. Granato, [the] record of [Vasquez's] telephone calls from the Washington County Correctional Facility, a letter from [Vasquez] to Ms. Granato, and video of [Vasquez] instructing his cohorts to post particular threatening messages on his social media directed at the victim, Ms. Granato." *Id.* The Commonwealth also introduced Vasquez's pretrial motion to modify bail, the transcript of the hearing on that motion, and the written order denying the motion.

The Commonwealth stressed that when denying Vasquez's motion to modify bail, the court had emphasized that the no-contact restriction remained in place:

> And I do want to continue the restrictions that I have on the original bail, but there will be no contact directly or indirectly with any of the victims, witnesses, or cooperating parties, and that includes family members, ladies and gentlemen. Indirect contact means when a family member calls or attempts to call. Even if you're trying to do it in a nice way, it's only going to be trouble for the Defendants. Please don't do that.

N.T., 5/11/20, at 49-50 (quoting Exh. 8 at 154).

Vasquez testified that he had no notice of the no-contact restriction because he never received a written order including the restriction, did not hear the oral order, and, in any event, believed any pre-trial restriction was void following trial:

---

[3] The hearing took place on the same day as Vasquez's sentencing hearing in the assault case.

Your Honor, I would like to say that I have never received any records or documents, anything that has anything to do with no contact. . . .

I just would like to say during our bail hearing, when you were saying — denying our bail, whatever, I didn't even know our bail was denied until after the hearing because I couldn't hear a word you were saying with a full courtroom. Other than that, I have never received any order to have no contact with anybody.

And then after the verdict was read, the trial was over, there was no order saying that I couldn't reach out and talk to anybody. The only order I have right here saying bail's being denied, and you're having a presentence investigation within 90 days. I assumed that since trial was over — even before trial I had no idea I wasn't allowed to contact my ex[-]fiancé[e]. I assumed after trial, she was back on Facebook, it was okay to reach out to her. I had no wrongful intent. The was – the order was not – I mean, I'm not – I wasn't aware of any order.

*Id.* at 64-65.

The court did not find Vasquez's testimony credible, but rather "opposite to the other testimony presented, and the exhibits and the record." Trial Ct. Op. at 6. The court noted that in addition to his presence at the original bail hearing, Vasquez had filed a pretrial motion to modify bail in which counsel had acknowledged the no-contact restriction. The court added that during argument on the bail motion, counsel again acknowledged the no-contact restriction. *Id.* at 7, 7 nn. 13 (citing Exh. 5) & 14 (citing Exh 7).[4]

The court concluded the Commonwealth had proven Vasquez had violated the court's no-contact order on six occasions. It convicted Vasquez of

---

[4] Vasquez argues the court cited portions of the transcript of the hearing on the motion to modify bail that occurred before the court ruled on the motion and reiterated the no-contract restrictions. However, the court's point was that defense counsel acknowledged during the argument portion of the hearing that a no-contact restriction was already in place.

six counts of indirect criminal contempt and sentenced him to three to six months' incarceration on each count, to be served consecutively to all other counts and to his sentence on the assault case.

Vasquez filed motions for post-sentence relief. Following argument, the court denied the motions.[5] This appeal followed.[6]

Vasquez raises the following issues:

I. Was the evidence insufficient as a matter of law to convict [Vasquez] of Indirect Criminal Contempt under 42 Pa.C.S.A § 4132(2)?

II. Did the Trial Court err and abuse its discretion when it imposed an illegal sentence on [Vasquez]?

_____

[5] Vasquez failed to file a timely appeal. He later filed a *pro se* Post Conviction Relief Act ("PCRA") petition seeking reinstatement of his appeal rights *nunc pro tunc*. The court dismissed the petition without appointing PCRA counsel. On appeal, we reversed and remanded for the appointment of counsel. **See Commonwealth v. Vasquez**, No. 887 WDA 2021, 2022 WL 2763717 (Pa.Super. filed July 15, 2022) (unpublished mem.).

On remand, the court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), at which Vasquez waived his right to counsel. Vasquez also filed a second PCRA petition, *pro se*, again requesting the reinstatement of his direct appeal rights, which the court accepted as an amendment to Vasquez's first petition. The court again dismissed the petition. On appeal, we reversed, finding the trial court had failed to give Vasquez written notice of his direct appeal rights, as is required by Rule 720(B)(4). We directed the trial court to reinstate Vasquez's direct appeal rights *nunc pro tunc*. **See Commonwealth v. Vasquez**, No. 1392 WDA 2023, 2024 WL 4024557 (Pa.Super. filed Sept. 3, 2024) (unpublished mem.).

[6] The trial court did not offer Vasquez counsel for his direct appeal, noting that Vasquez had waived his right to appellate counsel earlier in the proceedings. **See** Trial Ct. Op. at 1 n.1. Vasquez does not argue the court erred in failing to appoint counsel for this appeal.

III. Did the Trial Court err and abuse its discretion when it failed to give [Vasquez] the opportunity to be tried by jury?

IV. Did the Trial Court err and abuse its discretion when it conducted [Vasquez's] trial under the "ungraded misdemeanor" theory of Indirect Criminal Contempt?

V. Did the Trial Court err and abuse its discretion when it allowed [Vasquez] to stand trial without counsel of record?

Vasquez's Br. at 4.

## I. Sufficiency of the Evidence

Vasquez first argues that the Commonwealth presented insufficient evidence to prove the order prohibiting him from contacting Granato was clear, definite, and specific, and that he had notice of the no-contact provision. Vasquez argues that although the court stated on the record at the hearing on his motion to modify bail that he was to have no contact with the victim, witnesses, and co-defendants, there was nothing in the written order denying the motion that prohibited him from contacting anyone. He contends that this constitutes a discrepancy between the oral and written orders, such that the written order is controlling. Vasquez's Br. at 10-11 (citing *Commonwealth v. Brooker*, 103 A.3d 325 (Pa.Super. 2014)). He similarly claims that because the written order did not include the no-contact restriction, the imposition of the restriction was not definite, clear, or specific. *Id.* at 11.

Vasquez also contends that, even if the oral order was definite, clear, and specific, he had no notice of it. He points out that neither he "nor his counsel [ever] acknowledged on the record an understanding of the order." *Id.* at 10. He contrasts the facts of his case from those of *Commonwealth*

***v. Risoldi***, No. 1864 EDA 2016, 2017 WL 3017068 (Pa.Super. 2017) (unpublished mem.), in which he claims we "held the judge's oral order prohibiting contact was sufficient because 'Risoldi was present in the courtroom during the hearing and her counsel acknowledged on the record an understanding of the order.'" ***Id.*** at 12-13 (quoting ***Risoldi***, 2017 WL 3017068, at *4).

Vasquez next argues that even if he had notice of the pretrial no-contact restriction, that order was superseded by the post-trial bail order. ***Id.*** at 11-12 (citing ***In the Interest of M.D.***, 839 A.2d 1116 (Pa.Super. 2003)). Vasquez claims that order did not include any no-contact restriction, as it only stated that Vasquez shall "remain[] detained without bail." ***Id.*** at 12.

Finally, Vasquez argues that even if the order was clear and he had notice of it, the evidence was insufficient to prove he violated the no-contact directive with wrongful intent. He asserts that "he reached out to his ex-fianc[ée] to tell her that he forgave her for testifying against him" and "had a third party message her on [F]acebook to ask her for her phone number." ***Id.*** at 14-15. Vasquez claims that before the assault case, "he and Ms. Granato had been in a relationship for five years, were engaged to be married, owned a house together, and were raising his son together." ***Id.*** at 15. He argues his infraction in contacting Granato in this manner and for this reason was "*de minimis* and non-threatening." ***Id.*** (citing ***Commonwealth v. Haigh***, 874 A.2d 1174 (Pa.Super. 2005)).

We apply the following standard of review to a challenge to the sufficiency of the evidence:

> Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 242 A.3d 339, 352 (Pa.Super. 2020) (cleaned up).

"Indirect criminal contempt is a violation of a court order that occurred outside the court's presence." *Commonwealth v. McMullen*, 961 A.2d 842, 849 (Pa. 2008).[7] The Commonwealth is required to prove, beyond a reasonable doubt, that:

> (1) the court's order was definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited;

---

[7] The legislature has codified the offense of contempt at 42 Pa.C.S.A. § 4132(2), which allows the court to impose punishment for "Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court." 42 Pa.C.S.A. § 4132(2). However, our Supreme Court has stated that courts have the inherent right to impose punishment for criminal contempt, which is derived from Article 5 of the Constitution, rather than by statute. *McMullen*, 961 A.2d at 849; *see also Commonwealth v. Bartic*, 303 A.3d 124, 132 (Pa.Super. 2023).

(2) the contemnor had notice of the order;

(3) the act constituting the violation was volitional; and

(4) the contemnor acted with wrongful intent.

*Fetzer v. Fetzer*, 336 A.3d 1058, 1068 (Pa.Super. 2025).

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient. The Commonwealth presented evidence that, at the very least, the court specified in open court when denying Vasquez's motion to modify bail that he was to have no contact with any of the witnesses or cooperating parties, including family members. Vasquez concedes that he violated this order by contacting Granato.

We are unpersuaded by Vasquez's argument that because the written order denying his motion to modify bail did not include the no-contact restriction, there is a discrepancy between the written and oral orders. The written order was simply silent as to this provision. Moreover, Vasquez cites a case regarding a discrepancy between oral and written **sentencing** orders, which is inapplicable in this context. *See Brooker*, 103 A.3d at 329 n.4.

We are likewise unpersuaded that the Commonwealth's evidence was insufficient to prove Vasquez had notice of the restriction because, he alleges, neither he nor his counsel responded in open court after the court announced the restriction. First, in citing *Risoldi*, an unpublished memorandum that was decided prior to May 1, 2019, Vasquez is violating a Rule of Appellate Procedure. *See* Pa.R.A.P. 126(b). *Risoldi* is neither binding nor persuasive authority, much less citable. Regardless, *Risoldi* undermines Vazquez's

argument that the court's oral imposition of a no-contact provision was insufficient, as in *Risoldi*, we thought it was. We did not in *Risoldi* cite the fact that defense counsel had acknowledged the oral no-contact provision because there is some requirement that the defense do so for the oral instruction to be binding. Rather, we did so there as further evidence – in addition to the defendant's presence in the courtroom – that the defendant knew perfectly well about the no-contact provision. The same goes here. Viewed in the light most favorable to the Commonwealth, Vasquez's presence in the courtroom when the court reiterated the restriction was sufficient to prove beyond a reasonable doubt that he had notice of it.

We next reject Vasquez's claim that the post-verdict bail order superseded the pre-trial no-contact restriction. As Vasquez acknowledges, the verdict sheet simply states that Vasquez was to "remain detained without bail." Verdict, 2/12/20, at 2.[8] It therefore merely reaffirmed the previous bail order. It did not revoke the no-contact restriction.

Finally, we find no merit in Vasquez's argument that the Commonwealth's evidence was insufficient to prove he acted with wrongful intent. In at least one of the instances where Vasquez contacted Granato, he mailed her a letter from prison which stated it was a "test run" to "see if [it]

_____

[8] This document was not presented as evidence at the hearing on the instant charges. However, Vasquez alluded to the document during his testimony, and the trial court has supplemented the certified record to include it. The Commonwealth does not argue that we should not consider the verdict sheet, or that it is inaccurate.

gets to you unopened." N.T. at 39 (quoting Exh. 3). In the light most favorable to the Commonwealth, this was sufficient to prove that Vasquez willfully disobeyed the court's order. **Cf. Haigh**, 874 A.2d at 1177-78 (finding Commonwealth failed to prove wrongful intent where contemnor, subject to a PFA order, asked his wife about her cancer diagnosis during a hearing, because he believed "that the PFA order was relaxed to some extent in the courtroom context, especially where [he] was shackled and [his wife] was protected by an armed deputy sheriff").

## II. Legality of Sentence

In his second issue, Vasquez argues the court imposed an illegal sentence. He claims that 42 Pa.C.S.A. § 4133 only allows the court to impose a fine for contempt committed outside of court, whereas the court may impose a sentence of imprisonment for contempt committed in the presence of the court. Vasquez's Br. at 17-18 (citing **In the Interest of E.O.**, 195 A.3d 583 (Pa.Super. 2018)). Vasquez argues that even if we have since held this statute to be unconstitutional, or do so in this appeal, we should nonetheless find the trial court erred in failing to apply the applicable law at the time of his sentencing. He claims that if we "let[ his] sentence stand, it could very well send a message to [t]rial [c]ourts that they can ignore sentencing statutes

that they 'believe to be unconstitutional' while sentencing criminal defendants and then 'hope for affirmance' on appeal." **Id.** at 19.[9]

The constitutionality of a statue is a question of law. Thus, "our standard of review is *de novo*, and our scope of review is plenary." **McMullen**, 961 A.2d at 846.

Section 4133 states,

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.

In **McMullen**, the Supreme Court considered the constitutionality of a similar statute, Section 4136(b), which specified the maximum punishment for indirect criminal contempt for violating a restraining order or injunction. The Court found Section 4136(b) unconstitutional, stating, "[T]he legislature cannot legislate indirect criminal 'contempt,' as it is a violation of a court order, which the court inherently has the authority to punish for its violation." 961 A.2d at 850.

Thereafter, in **Commonwealth v. Leomporra**, No. 1606 EDA 2019, 2020 WL 6821633 (Pa.Super. filed Nov. 20, 2020) (unpublished mem.), a panel of this Court considered whether Section 4133, the statute at issue here,

_____

[9] Vasquez also claims he was erroneously sentenced under 42 Pa.C.S.A. § 5947(f). Vasquez's Br. at 19. However, this appears to be an error in the docket, and does not appear anywhere else in the certified record. **See** Trial Ct. Op. at 7 n.16.

similarly "infringes on a court's inherent authority to punish individuals who commit indirect contempt of court." 2020 WL 6821633 at *8. Relying on **McMullen**, we concluded that Section 4133 was unconstitutional in prohibiting a court from imposing any sanction other than a fine for indirect criminal contempt. We stated,

> Like Section 4136(b), Section 4133 is a legislative creation that purports to limit a court's inherent authority to impose punishment for indirect criminal contempt. Thus, in the same manner that the Supreme Court held that the legislature's authority to mete out punishment for criminal conduct against the public under the Crimes Code did not license it to restrict the court's ability to punish for criminal contempt under Section 4136(b), we conclude that Section 4133 is an impermissible encroachment upon the [M]unicipal [C]ourt's inherent power to punish [the a]ppellant for his contemptuous conduct. Therefore, the court was not limited to imposing only a fine for [the a]ppellant's indirect criminal contempt.

**Id.**

Most recently, we reached the parallel result in **In re Davis**, 302 A.3d 166, 186 (Pa.Super. 2023). Again relying on **McMullen**, we rejected the argument that a person guilty of direct criminal contempt could only be punished to a term of imprisonment pursuant to Section 4133. We agreed with the trial court that Section 4133 is "an unconstitutional infringement on the Court's inherent authority to set forth the punishment for direct criminal contempt." **Id.**[10]

**Leomporra** is not binding authority, and neither **McMullen** nor **In re Davis** directly apply. Nonetheless, under the rationale of **McMullen** and **In**

---

[10] We adopted the opinion of the trial court.

*re Davis*, we conclude, as we did in *Leomporra*, that Section 4133 unconstitutionally restricts the court's inherent authority to sentence persons convicted of indirect criminal contempt.[11] Therefore, the court did not err in disregarding this statute and sentencing Vasquez to a period of confinement.

### III. Trial by Jury

Vasquez next argues the court erred in failing to afford him a jury trial, because his aggregate sentence exceeded six months. Vasquez's Br. at 21 (citing *Commonwealth v. Mayberry*, 327 A.2d 86 (Pa. 1974)). Vasquez claims he "could not [have] demanded a jury trial because he was informed by the Court that his only option was a bench trial, and that he had no right to a jury trial." Vasquez's Reply Br. at 2 (citing N.T., 5/4/20, at 4).

"It is well settled in Pennsylvania that a party must make a timely and specific objection at trial in order to preserve an issue for appellate review." *Commonwealth v. Spone*, 305 A.3d 602, 612 (Pa.Super. 2023) (citing Pa.R.A.P. 302(a)). Issues that are not preserved are waived. *Id.* "Constitutional claims are subject to waiver regardless of their importance." *Commonwealth v. Knox*, 190 A.3d 1146, 1152 n.5 (Pa. 2018); *see, e.g.,*

---

[11] In *In the Interest of E.O.*, on which Vasquez relies, we held the trial court erred in sentencing the contemnor to a period of incarceration for an indirect criminal contempt, in violation of Section 4133. *See In Int. of E.O.*, 195 A.3d at 588. However, as we noted in *Leomporra*, the constitutionality of Section 4133 was not at issue in *In the Interest of E.O. See Leomporra*, 2020 WL 6821633, at *8 n.9. We therefore do not consider In the *Interest of E.O.* to be relevant to this issue.

*Jackson v. Vaughn*, 777 A.2d 436, 438 (Pa. 2001) (finding speedy trial claim waived where it was not raised in the trial court).

Here, Vasquez did not object when the court said he would receive a bench trial "because these charges do not give rise to a right to a jury trial." N.T., 5/4/20, at 4. Nor did he raise the issue in his post-sentence motion. If the court erred in failing to offer Vasquez a jury trial, Vasquez was obliged to bring this matter to the court's attention. Vasquez's failure to raise the issue before the trial court constitutes waiver. *See* Pa.R.A.P. 302(a).

## IV. Due Process

In his fourth issue, Vasquez argues the court committed structural error and violated his due process rights by failing to afford him a jury trial. He asserts, "Due to the unique circumstances of this case and the lack of authority germa[]ne to this issue, Vasquez respectfully asks this Honorable Court not to find waiver and liberally construe this issue." Vasquez's Br. at 24-25.

As with the preceding issue, Vasquez has waived this issue by failing to raise it below. *See* Pa.R.A.P. 302(a).

## V. Right to Counsel

In his final issue, Vasquez asserts the court deprived him of his right to trial counsel. He claims his attorney of record on the assault case never formally entered his appearance in the instant case, and Vasquez "was *de facto* unrepresented at trial." Vasquez's Br. at 27. He points out that his trial counsel on the assault case abandoned him by failing to file an appeal of this case, requiring him to file two PCRA petitions for the reinstatement of his

direct appeal rights. He also questions whether he will be permitted to bring claims of trial counsel ineffectiveness in a future PCRA petition, where counsel never formally entered his appearance in this case.

The court found that Vasquez was represented by counsel in the contempt proceeding. It noted that the same lawyer that represented Vasquez in the assault case cross-examined the Commonwealth's witnesses in the instant matter and filed a post-sentence motion on Vasquez's behalf.

We agree that Vasquez was properly afforded counsel in the instant matter. Vasquez may raise any ineffectiveness claim he wishes (we express no opinion on whether any such claim will be meritorious, timely, or otherwise proper).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/28/2025